1               **IN THE UNITED STATES DISTRICT COURT**
                **FOR THE WESTERN DISTRICT OF TEXAS**
2                       **AUSTIN DIVISION**

3  DYNAMIC 3D GEOSOLUTIONS LLC,          ) AU:14-CV-00111-LY
                                          ) AU:14-CV-00112-LY
4     Plaintiff                          ) AU:14-CV-00526-LY
                                          ) AU:14-CV-00527-LY
5  VS.                                    ) AU:14-CV-00528-LY
                                          ) AU:14-CV-00529-LY
6  HALLIBURTON COMPANY, et al.,           )
                                          )
7     Defendants.                        ) AUGUST 12, 2014

8          ************************************************
            TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE
9
            BEFORE THE HONORABLE LEE YEAKEL
10         ************************************************

11 APPEARANCES:

12 DYNAMIC 3D                MICHAEL JAMES COLLINS
   GEOSOLUTIONS LLC:         COLLINS EDMONDS POGORZELSKI
13                           SCHLATHER & TOWER PLLC
                             1616 S. VOSS ROAD, SUITE 125
14                           HOUSTON, TEXAS 77018

15 LMK RESOURCES             SCOTT W. HEJNY
   HALLIBURTON COMPANY       MCKOOL SMITH, P.C.
16 LANDMARK:                 300 CRESCENT COURT, SUITE 1500
                             DALLAS, TEXAS 75201
17
   PARADIGM, B.V.:           MICHAEL CHIBIB
18                           BRACEWELL & GIULIANI LLP
                             111 CONGRESS AVENUE, SUITE 2300
19                           AUSTIN, TEXAS 78701

20 IHS INC:                  DAVID PHILIP WHITTLESEY
                             ANDREWS KURTH LLP
21                           111 CONGRESS AVENUE, SUITE 1700
                             AUSTIN, TEXAS 78701
22
                             JEFFREY KIRK SHERWOOD
23                           DICKSTEIN SHAPIRO, LLP- DC
                             1825 EYE STREET NW
24                           WASHINGTON, D.C. 20006-5403

25

```
 1  EMERSON ELECTRIC CO.          ETHAN L. SHAW
    ROXAR, INC:                   SHAW COWART LLP
 2                                1609 SHOAL CREEK BLVD, SUITE 100
                                  AUSTIN, TEXAS 78701
 3
                                  LINDA E.B. HANSEN
 4                                FOLEY & LARDNER LLP
                                  777 E. WISCONSIN AVENUE, 33RD FLOOR
 5                                MILWAUKEE, WISCONSIN 53202

 6  SCHLUMBERGER LIMITED:         ANN MARIE WAHLS
                                  LATHAM & WATKINS LLP
 7                                330 NORTH WABASH AVENUE, SUITE 2800
                                  CHICAGO, ILLINOIS 60611
 8
                                  STEPHEN E. MCCONNICO
 9                                SCOTT, DOUGLASS & MCCONNICO
                                  ONE AMERICAN CENTER
10                                600 CONGRESS AVE., 15TH FLOOR
                                  AUSTIN, TEXAS 78701
11
    COURT REPORTER:               ARLINDA RODRIGUEZ, CSR
12                                501 WEST 5TH STREET, SUITE 4152
                                  AUSTIN, TEXAS 78701
13                                (512) 391-8791

14

15

16

17

18

19

20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

| | | |
|---|---|---|
| 09:28:34 | 1 | (Open Court) |
| 09:28:34 | 2 | THE COURT:  We've got a whole passel of Dynamic 3D |
| 09:28:40 | 3 | Geosolutions LLC cases here today to talk about.  I can tell by |
| 09:28:48 | 4 | the lineup of who's here and who's there that its looks like a |
| 09:28:52 | 5 | fair fight. |
| 09:28:56 | 6 | Let me start with the plaintiff and let me get |
| 09:29:00 | 7 | announcements as to who you represent, and we'll go from there. |
| 09:29:08 | 8 | MR. COLLINS:  Your Honor, Michael Collins for |
| 09:29:11 | 9 | Plaintiff Dynamic 3D Geosolutions. |
| 09:29:15 | 10 | THE COURT:  In all of the cases, I presume, |
| 09:29:17 | 11 | Mr. Collins? |
| 09:29:18 | 12 | MR. COLLINS:  Yes, sir.  In all of the cases.  And I |
| 09:29:20 | 13 | have with me today a client representative, Mr. Gary Fischman. |
| 09:29:25 | 14 | THE COURT:  Very good.  Thank you. |
| 09:29:32 | 15 | All right.  Let's start and go slowly so I can get a |
| 09:29:35 | 16 | check on this.  Let me run down the line.  Who is here for the |
| 09:29:37 | 17 | defendants in the *Dynamic v. LMK Resources* case? |
| 09:29:42 | 18 | MR. HEJNY:  Scott Hejny with McKool Smith, |
| 09:29:45 | 19 | Your Honor. |
| 09:29:47 | 20 | THE COURT:  All right.  And for the defendants in the |
| 09:29:50 | 21 | *Paradigm* case? |
| 09:29:52 | 22 | MR. CHIBIB:  Mike Chibib, Bracewell & Giuliani, for |
| 09:30:00 | 23 | Paradigm. |
| 09:30:00 | 24 | THE COURT:  And in the *IHS* case? |
| 09:30:02 | 25 | MR. WHITTLESEY:  Your Honor, David Whittlesey with |

| 09:30:05 | 1 | Andrews Kurth.  And we also have Jeff Sherwood via telephone. |

```
09:30:05   1   Andrews Kurth.  And we also have Jeff Sherwood via telephone.

09:30:10   2            THE COURT:  Mr. Sherwood, do we have you on the

09:30:12   3   phone?

09:30:13   4            MR. SHERWOOD:  Yes, Your Honor.  Good morning.

09:30:16   5            THE COURT:  Good morning.  You're coming through loud

09:30:17   6   and clear.  Let me tell the lawyers in the courtroom that the

09:30:20   7   way the system is set up, that when any of you address the

09:30:23   8   Court, if you would speak into one of the microphones, we can

09:30:26   9   ensure that Mr. Sherwood hears it.  You don't have to raise

09:30:30  10   your voice, but I think if we're into the microphone, the way

09:30:33  11   it's wired, that will get that taken care of.

09:30:36  12            And in the Emerson Electric case and Roxar?

09:30:40  13            MR. SHAW:  Ethan Shaw for the Emerson, Your Honor.

09:30:45  14   Roxar has not yet been served.

09:30:49  15            MS. HANSEN:  And also Linda Hansen.  And, actually,

09:30:53  16   Roxar, Inc. has been served, but not Roxar AS.  So we will be

09:30:58  17   appearing on behalf of them once they're served.

09:31:01  18            THE COURT:  All right.  Thank you.  And the

09:31:05  19   Halliburton and Landmark case?

09:31:08  20            MR. HEJNY:  Again, Scott Hejny, Your Honor, with

09:31:13  21   McKool Smith.

09:31:18  22            THE COURT:  And Schlumberger?

09:31:19  23            MR. MCCONNICO:  Your Honor, Steve McConnico for

09:31:23  24   Schlumberger.

09:31:23  25            MS. WAHLS:  And Ann Marie Wahls, also for
```

| | | |
|---|---|---|
| 09:31:26 | 1 | Schlumberger. |
| 09:31:29 | 2 | THE COURT:  I think that's it.  Did I leave out any |
| 09:31:31 | 3 | cases? |
| 09:31:32 | 4 | (No response) |
| 09:31:32 | 5 | THE COURT:  Good.  If we have a scorecard, it's |
| 09:31:34 | 6 | always good to start. |
| 09:31:37 | 7 | Well, we are here on what I think are, if I've |
| 09:31:44 | 8 | counted them correctly, six cases that we have in this group. |
| 09:31:47 | 9 | And the reason for this getting together, and we can be |
| 09:31:51 | 10 | relatively informal on it, is to talk about, in general, how |
| 09:31:59 | 11 | we're going to manage these cases and what we need to do to get |
| 09:32:02 | 12 | them under control. |
| 09:32:03 | 13 | I know all of you probably know my tendencies and |
| 09:32:13 | 14 | what I like to do, which is initially get to Markman as quickly |
| 09:32:16 | 15 | as we can get to Markman and not do anything else until we get |
| 09:32:21 | 16 | to Markman.  There are always exceptions.  This Court is not a |
| 09:32:28 | 17 | one-size-fits-all.  If you've look at previous scheduling |
| 09:32:31 | 18 | orders that I have done in cases -- and I'm sure you have |
| 09:32:34 | 19 | because I'm sure I have been Googled to death by all of you on |
| 09:32:38 | 20 | all of my tendencies and everything that I do -- do not think |
| 09:32:42 | 21 | that I have a standard scheduling order with regard to time and |
| 09:32:48 | 22 | time elapsing, because I don't.  There is, coincidentally, a |
| 09:32:55 | 23 | lot of scheduling orders that may look the same as to time, but |
| 09:32:59 | 24 | I don't want you to feel that you're bound by any particular |
| 09:33:04 | 25 | time line. |

| | | |
|---|---|---|
| 09:33:04 | 1 | I like to get to Markman as quickly as possible |
| 09:33:08 | 2 | because, one, sometimes cases settle after the claims |
| 09:33:11 | 3 | construction order is reviewed and, secondly, patent cases are |
| 09:33:17 | 4 | extremely expensive to try and deal with.  They were expensive |
| 09:33:25 | 5 | before, and then along came the America Events Act, and they |
| 09:33:30 | 6 | got more expensive, in my opinion, because now we have to |
| 09:33:33 | 7 | divide all of these cases out into separate things and then the |
| 09:33:37 | 8 | Court has to determine how they're going to put them back |
| 09:33:41 | 9 | together to get through the initial stages of the case. |
| 09:33:43 | 10 | I will tell you, and then I will hear from you, that |
| 09:33:47 | 11 | one of the things I desire to do in a case such as this is to |
| 09:33:56 | 12 | at least combine the cases for pretrial matters.  Because what |
| 09:34:00 | 13 | I don't want to run into is the same depositions being taken in |
| 09:34:07 | 14 | case after case after case after case over and over again. |
| 09:34:12 | 15 | That does not mean that I'm going to try to push you or force |
| 09:34:17 | 16 | you to try the cases together. |
| 09:34:19 | 17 | The first thing you should know is, number one, don't |
| 09:34:23 | 18 | be concerned about this court's docket.  It is a big docket, |
| 09:34:27 | 19 | but we get to our cases.  Secondly, this court is not concerned |
| 09:34:32 | 20 | with how long it will take this case to try, whether it |
| 09:34:36 | 21 | combines a lot of the defendants or whether we try each of the |
| 09:34:40 | 22 | six cases separately.  I owe the taxpayers an honest day's work |
| 09:34:48 | 23 | every day, and I don't mind whether I'm sitting on this bench |
| 09:34:53 | 24 | in one case for six weeks or 20 cases in six weeks.  So it just |
| 09:34:59 | 25 | doesn't matter.  So that should not enter into your thinking in |

09:35:02  1  any way.

09:35:03  2          What Judge Sparks and I got out of the new

09:35:06  3  courthouse, once the promise of getting additional federal

09:35:10  4  judges was broken by your congress, is we have additional

09:35:15  5  courtroom space.  We also have Judge Ezra, who is a senior

09:35:21  6  judge who sits in San Antonio who likes to come to Austin

09:35:24  7  because he likes our courthouse better.  And he is a hard

09:35:29  8  worker.  And so that allows me -- because I would not send him

09:35:34  9  a patent case because then he would never come back if that was

09:35:38  10 one that I asked for help on.  But he is always available to

09:35:43  11 handle the remainder of my docket.  So it is not a problem for

09:35:47  12 me to sit through a long case.  So don't go into this with any

09:35:51  13 idea that, if you don't get it settled, the court is in any way

09:35:55  14 going to be concerned about how long it takes a case to try

09:35:59  15 because I am not going to be concerned about it.

09:36:01  16         I mentioned the cost of these cases earlier because,

09:36:06  17 for some reason when I read the literature, it seems like the

09:36:09  18 judges always get blamed for the cost of the patent litigation.

09:36:14  19 Well, the reason that we're going to try to get to Markman

09:36:18  20 early before you get wide open discovery is to deprive you of

09:36:22  21 your trips.  Patent lawyers I know like to take depositions in

09:36:26  22 Shanghai and London and places all over the world.  You

09:36:30  23 generally don't have to do that, if ever, before we get to

09:36:35  24 claims construction.  So that's why I try to hold us to an

09:36:39  25 initial schedule of getting to claims construction before we do

09:36:45  1   anything else.

09:36:46  2          Now, that having been said, I do note that we have

09:36:52  3   rendered initial scheduling orders in two of the cases, the one

09:36:57  4   that I will call the *Halliburton* case for simplicity or in the

09:37:02  5   vernacular of patent lawyers, I might as well call it the 111

09:37:07  6   case, and then the *Schlumberger* case, which is the 112 case.

09:37:11  7   That leaves us with the *Emerson*, or the 526 case, the

09:37:17  8   *LMK Resources*, or the 527 case, the *Paradigm,* or the 528 case,

09:37:23  9   and the *IHS*, or the 529 case.

09:37:30  10         I will start with the plaintiff, not because I have

09:37:33  11  any particular affinity for plaintiffs in these cases, but I

09:37:39  12  read from top to bottom usually and the plaintiff comes above

09:37:42  13  the "v." and it's a convenient default.  So Mr. Collins, tell

09:37:45  14  me, one, your opinion on combining all of those cases for

09:37:53  15  initial scheduling and pre-Markman discovery, with the

09:37:58  16  understanding -- and all of you listen to this -- that

09:38:01  17  post-claims construction, we're going to have another

09:38:04  18  scheduling conference and we'll figure out where we're going to

09:38:07  19  go the rest of the way.

09:38:09  20         So, Mr. Collins, let me start with you.

09:38:11  21         MR. COLLINS:  Your Honor, Dynamic 3D Geo's position

09:38:18  22  is that the currently scheduled Markman for the first two filed

09:38:22  23  cases against Schlumberger and Halliburton should go forward as

09:38:27  24  scheduled Thanksgiving week.  And I've spoken with counsel for

09:38:30  25  both Schlumberger and for Halliburton, and I'm not going to try

| | | |
|---|---|---|
| 09:38:33 | 1 | to speak for them here today, but I believe it's their position |
| 09:38:36 | 2 | as well that they would like to move it -- move it forward as |
| 09:38:41 | 3 | scheduled because we've already made some significant progress. |
| 09:38:46 | 4 | We've -- we've provided infringement contentions to the |
| 09:38:49 | 5 | defendants.  They have provided the plaintiff with invalidity |
| 09:38:53 | 6 | contentions.  We've exchanged claim terms for construction, and |
| 09:38:57 | 7 | this week we're going to agree on a list of claim terms.  The |
| 09:39:01 | 8 | case is moving along quite nicely. |
| 09:39:06 | 9 | Our proposal for the other four cases would be to |
| 09:39:09 | 10 | enter a scheduling order that looks very similar in format to |
| 09:39:13 | 11 | the one entered in the first two cases, but push the dates back |
| 09:39:17 | 12 | four months or so to account the four-month later filing date |
| 09:39:21 | 13 | and also to account for the fact that the holidays intervene. |
| 09:39:25 | 14 | And we -- we've spoken to counsel for all four of the |
| 09:39:29 | 15 | defendants in the second filed case and have at this point |
| 09:39:36 | 16 | maybe not agreed, but at least they're aware.  And I'll let |
| 09:39:40 | 17 | them speak for themselves today. |
| 09:39:43 | 18 | THE COURT:  Well, tell me why, from your point of |
| 09:39:47 | 19 | view, I should want to do this twice? |
| 09:39:50 | 20 | MR. COLLINS:  Well, the idea is that the first |
| 09:39:53 | 21 | Markman with Schlumberger and Halliburton, although it's in no |
| 09:39:57 | 22 | way binding on the other four defendants and I'll concede that, |
| 09:40:00 | 23 | has the potential to greatly simplify the issues in the case. |
| 09:40:05 | 24 | And, frankly, I think it may leave -- my experience with these |
| 09:40:08 | 25 | serially filed cases -- and I've been on the defendant's side |

09:40:11   1   as well -- is that by the time you get to the third or fourth

09:40:15   2   set of defendants -- and these are East Texas cases, but in

09:40:18   3   this case, the second group of defendants -- a lot of the claim

09:40:20   4   terms have already been taken care of and the defendants and

09:40:23   5   the plaintiff can agree on them.  And, quite frankly, without

09:40:26   6   going into the claim construction arguments, some of the claim

09:40:31   7   terms may be -- the constructions may be dispositive on some of

09:40:36   8   the claims, if not all.

09:40:37   9        THE COURT:  Well, except for the fact that the other

09:40:40   10  four defendants -- groups of defendants don't get to play.

09:40:45   11       MR. COLLINS:  Well, that's correct, Your Honor.  But

09:40:46   12  they get to play starting anew four months down the road, and

09:40:53   13  it may be that they can use what's -- what's happened

09:40:57   14  previously.

09:40:57   15       THE COURT:  All right.  Let me start with

09:41:02   16  Halliburton, then.  What is Halliburton's position on this?

09:41:09   17       MR. HEJNY:  Your Honor, Scott Hejny, McKool Smith, on

09:41:13   18  behalf of Halliburton.  Halliburton agrees in principle with

09:41:16   19  the plaintiff that we would like to continue with the current

09:41:19   20  schedule.  Obviously, I don't know if that's going to work for

09:41:25   21  the Court for the very reasons that you set forth, and I'm

09:41:27   22  almost certain I'm going to get push-back from the other

09:41:30   23  defendants as to the case schedule.

09:41:32   24       We absolutely believe that it makes sense to get to

09:41:35   25  Markman as soon as possible.  The current schedule does indeed

| | | |
|---|---|---|
| 09:41:39 | 1 | work for Halliburton.  We're going to run into some conflicts |
| 09:41:42 | 2 | with the beginning of the following year.  Obviously, we'll do |
| 09:41:45 | 3 | what the Court wants with respect to the schedule if it's |
| 09:41:48 | 4 | Your Honor -- |
| 09:41:49 | 5 | THE COURT:  That's generous. |
| 09:41:52 | 6 | MR. HEJNY:  We always like to please the Court, |
| 09:41:54 | 7 | Your Honor.  But we would like to move forward with the current |
| 09:41:57 | 8 | date, but we understand the obstacles that would be facing the |
| 09:42:01 | 9 | Court when, as you say, the others couldn't play. |
| 09:42:05 | 10 | THE COURT:  Thank you.  And Schlumberger. |
| 09:42:07 | 11 | MS. WAHLS:  Good morning, Your Honor.  Ann Marie |
| 09:42:09 | 12 | Wahls of Latham & Watkins on behalf of Schlumberger. |
| 09:42:11 | 13 | Schlumberger also joins in this instance the |
| 09:42:13 | 14 | plaintiff's position as far as moving forward with the current |
| 09:42:16 | 15 | schedule that Your Honor set in April of this year.  We |
| 09:42:19 | 16 | believe, since our case was filed in February, it's been |
| 09:42:22 | 17 | pending now for six months and we'd like to avoid any further |
| 09:42:26 | 18 | delay, if possible, and continue on. |
| 09:42:28 | 19 | And as Mr. Collins had noted, the parties have |
| 09:42:30 | 20 | exchanged their initial infringement contentions as well as the |
| 09:42:35 | 21 | invalidity contentions, and we're well on the way to continuing |
| 09:42:38 | 22 | on with the Markman schedule that Your Honor set in April.  So |
| 09:42:41 | 23 | we would like to maintain that schedule, if possible. |
| 09:42:45 | 24 | THE COURT:  Thank you. |
| 09:42:47 | 25 | MS. WAHLS:  Thank you, Your Honor. |

09:42:49   1              THE COURT:  Emerson.

09:42:53   2              MS. HANSEN:  Linda Hansen on behalf of Emerson.

09:42:57   3              As was mentioned before, our clients include Emerson

09:42:59   4   Electric Company, Emerson Process Management, LLLP,

09:43:04   5   Roxar, Inc., and Roxar AS.  But, as of today, Roxar AS has not

09:43:10   6   been served with the compliant in this case.  So particularly

09:43:13   7   on behalf of them, but on behalf of all of our clients here, we

09:43:17   8   just simply cannot join with the schedule that Schlumberger and

09:43:21   9   Halliburton have and we would ask that, if the cases are all

09:43:24  10   going to be joined together for scheduling, as we believe is

09:43:27  11   appropriate, that they be moved out at least four and perhaps

09:43:30  12   six months to accommodate at least service of all the

09:43:33  13   defendants.  We have offered to the plaintiff that we would

09:43:36  14   accept service on behalf of Roxar AS because they're Norwegian

09:43:40  15   and might be difficult to serve, but we have not yet been

09:43:43  16   served with that.

09:43:44  17              THE COURT:  Thank you.  And the *LMK* case?

09:43:48  18              MR. HEJNY:  Again, Your Honor, Scott Hejny, McKool

09:43:55  19   Smith.  LMK would be willing to proceed with the current

09:43:57  20   Markman schedule that's in place now.

09:44:03  21              THE COURT:  I wondered how you were going to put one

09:44:06  22   foot on the canoe and one foot on the dock.

09:44:12  23              MR. HEJNY:  They're both in the canoe, Your Honor.

09:44:16  24              THE COURT:  And the *Paradigm* case?

09:44:25  25              MR. CHIBIB:  Mike Chibib on behalf of Paradigm,

| | | |
|---|---|---|
| 09:44:29 | 1 | Your Honor. |
| 09:44:29 | 2 | Paradigm would agree with the Court to consolidate |
| 09:44:29 | 3 | the case for pretrial purposes.  We would also, similar to |
| 09:44:32 | 4 | Emerson, ask for additional time.  Four to six months is |
| 09:44:36 | 5 | appropriate in our estimation, but obviously wherever you can |
| 09:44:39 | 6 | find a spot for the Markman hearing in late spring would be |
| 09:44:43 | 7 | great.  And we would obviously object to the notion of two |
| 09:44:45 | 8 | Markmans because of our inability to participate, at least |
| 09:44:48 | 9 | fully, in the first one.  Thank you. |
| 09:44:51 | 10 | THE COURT:  Thank you.  And the *IHS* case? |
| 09:45:01 | 11 | MR. WHITTLESEY:  David Whittlesey for IHS.  As long |
| 09:45:05 | 12 | as we're not put on the current schedule, which nobody is |
| 09:45:08 | 13 | asking for, I think we're okay.  I've seen some other dates |
| 09:45:11 | 14 | that have been proposed by Paradigm pushing it out.  We're |
| 09:45:16 | 15 | generally okay with those dates as well.  So I was wondering |
| 09:45:20 | 16 | how you were going to do two Markman hearings. |
| 09:45:23 | 17 | THE COURT:  Well, the way you do two Markman hearings |
| 09:45:26 | 18 | is you do one and then you do another one.  That's not the hard |
| 09:45:29 | 19 | logistical component here. |
| 09:45:32 | 20 | MR. WHITTLESEY:  We'll leave that up to the Court, |
| 09:45:34 | 21 | Judge.  But we're okay with the dates.  I think Paradigm has |
| 09:45:38 | 22 | some they've proposed, and we're okay with those.  Just as long |
| 09:45:40 | 23 | as we're not put on the current schedule is fine with us. |
| 09:45:48 | 24 | THE COURT:  All right.  That was not particularly |
| 09:45:52 | 25 | surprising.  Let me address this initially, then, to the |

09:45:58  1    plaintiffs and the attorneys in the 111 and the 112 cases, the

09:46:05  2    ones that currently have a scheduling order in effect:

09:46:15  3         What type of discovery have you been doing or do you

09:46:17  4    anticipate pre-Markman?

09:46:23  5         MR. COLLINS:  Your Honor, to date, no discovery has

09:46:26  6    been done pre-Markman.  We have agreed with Defendant

09:46:31  7    Halliburton to an exchange of certain limited documents that

09:46:35  8    may have some bearing on claim construction and are going to

09:46:39  9    implement that privately.  We will be submitting for the

09:46:44  10   Court's consideration and agreed protective order shortly to

09:46:49  11   cover that exchange of documents.

09:46:53  12        I can tell you that Schlumberger has identified

09:46:57  13   several experts that it may use in connection with claim

09:47:05  14   construction and the pre-claim construction tutorial.  And

09:47:08  15   it -- we, of course, will want to --

09:47:10  16        THE COURT:  Now, I want to stop you right there.  I

09:47:13  17   do not ever want to hear "tutorial" in the same sentence with

09:47:17  18   "claims construction" in my court.  That is a pet peeve of

09:47:22  19   mine.  My tutorials have nothing to do with claims

09:47:26  20   construction, and everybody in this room needs to know that.

09:47:28  21        Somehow in the literature and in the CLE conferences,

09:47:35  22   the Patent Bar has gotten into their head -- and maybe some of

09:47:40  23   my colleagues are responsible for this -- that the tutorial is

09:47:43  24   related to the Markman hearing.  It is not.  So know this, as

09:47:50  25   we talk about tutorials in my court, tutorials are technical

| | | |
|---|---|---|
| 09:47:55 | 1 | tutorials where you teach me your science or you teach me about |
| 09:48:00 | 2 | your product or you teach me about your process in order that I |
| 09:48:05 | 3 | can come up to speed factually on what we're talking about and |
| 09:48:10 | 4 | get my hands around what the object of the dispute is as |
| 09:48:15 | 5 | opposed to the dispute itself. |
| 09:48:19 | 6 | I do not want, when we have a tutorial, it focused on |
| 09:48:22 | 7 | claim terms or anything of that nature.  In my court the |
| 09:48:28 | 8 | tutorial generally precedes the Markman hearing because what |
| 09:48:32 | 9 | you have to deal with with me is a generalist judge who is |
| 09:48:37 | 10 | trying to learn as fast as he can about the product or the |
| 09:48:41 | 11 | process or what's involved here.  And it helps all of you if I |
| 09:48:47 | 12 | get it in layers -- if it's layered. |
| 09:48:50 | 13 | So it's easier for me to understand your case at |
| 09:48:56 | 14 | claims construction if I know what the product or the process |
| 09:48:59 | 15 | or the device or the thing or the formula that we're talking |
| 09:49:03 | 16 | about is.  So I just want to put a stop to that at the |
| 09:49:07 | 17 | beginning.  I don't want you focused as we move toward Markman |
| 09:49:11 | 18 | on whatever you're going to do at your tutorial as being |
| 09:49:15 | 19 | focused on the Markman hearing.  That is not helpful to me. |
| 09:49:18 | 20 | As I've said numerous times, what I want you to do is |
| 09:49:24 | 21 | to teach me about what's involved here.  You can do it |
| 09:49:28 | 22 | yourselves; you can have a scientist do it; you can have the |
| 09:49:32 | 23 | inventor do it.  If it's something that somebody can put their |
| 09:49:37 | 24 | hands on and you can bring it, that is always helpful, to see |
| 09:49:42 | 25 | what we're talking about. |

```
09:49:44   1          Possibly the least effective way to conduct a
09:49:47   2   tutorial is have a lawyer do a PowerPoint.  And because I over
09:49:51   3   and over say that's the least effective way to do it, probably
09:49:54   4   90 percent of my tutorials involve lawyers doing PowerPoints.
09:49:59   5   I tell you that has marginal effectiveness.  So know that.
09:50:04   6          So end of lecture, Mr. Collins.  You may proceed.
09:50:08   7   You walked into that, and I couldn't let it go by.
09:50:11   8          MR. COLLINS:  I'm about to sum up, Your Honor.  Long
09:50:13   9   story, short:  No discovery has yet been conducted pre-Markman.
09:50:17  10   We anticipate that some limited discovery is going to occur in
09:50:21  11   the form of an exchange of documents with Halliburton and
09:50:25  12   perhaps reciprocal depositions of experts with Schlumberger.
09:50:29  13          THE COURT:  All right.  Does Halliburton and
09:50:37  14   Schlumberger agree with that basically?
09:50:39  15          MR. HEJNY:  Yes, Your Honor.  Halliburton does.
09:50:42  16          MS. WAHLS:  Ann Marie Wahls on behalf of
09:50:44  17   Schlumberger.
09:50:44  18          Schlumberger has included in its exchange of claim
09:50:50  19   terms a claim that claim one is indefinite.  And as a result of
09:50:55  20   that, out of an abundance of caution, we did disclose an expert
09:50:58  21   to speak, you know, to that topic in particular.  And as
09:51:03  22   Mr. Collins indicated, we also disclosed a Schlumberger witness
09:51:08  23   to speak at the technology tutorial to provide Your Honor with
09:51:12  24   information about the technology and the accused systems.
09:51:16  25          THE COURT:  Well, it sounds to me like, at least as
```

09:51:19   1   to the two cases we have scheduling orders in, we're not going

09:51:24   2   far out.  As I have said before, and I say it for the benefit

09:51:28   3   of the lawyers that haven't been here in this case before,

09:51:31   4   other than minor discovery along the lines that was just

09:51:41   5   mentioned, I've always had a hard time figuring out why

09:51:44   6   discovery was needed on claims construction anyway.

09:51:47   7          I will tell you-all that, well before *Phillips*, it

09:51:50   8   was this Court's position that it would be the rare case that

09:51:55   9   couldn't be determined from the intrinsic record on claims

09:51:59  10   construction.  I approach claims construction the same way I

09:52:02  11   approach statutory construction, and that is you look at the

09:52:06  12   term the way it was used, you look at the surrounding language

09:52:09  13   of where it was used, you look at how the inventor used it.

09:52:16  14   And it is the rare case that that can't be determined solely

09:52:21  15   from the intrinsic record.

09:52:23  16          So you-all need to know that, even if you're going to

09:52:26  17   present -- I don't bar the lawyers from presenting extrinsic

09:52:34  18   evidence at the Markman hearing.  I feel like you should be

09:52:37  19   able to make your record the best possible way you can make

09:52:40  20   your record.  But as a practice tip, you're always going to be

09:52:46  21   better off and have a stronger case in front of me if you have

09:52:50  22   a strong argument on the intrinsic record.

09:52:55  23          Seldom, if ever, where one party has argued the

09:52:58  24   intrinsic record and another party has said, Well, I should

09:53:01  25   ignore that and just look at extrinsic evidence, has that party

09:53:06   1   prevailed on the extrinsic record.  So I tell you that in order

09:53:10   2   that you can do whatever you want to do with it.  It is much

09:53:16   3   more persuasive.

09:53:19   4         Also, when you make your Markman arguments, you are

09:53:23   5   much better off, since no one has the burden of proof on claims

09:53:27   6   construction, to argue to me why you should get what your

09:53:34   7   construction is, not why the other side should not get theirs.

09:53:37   8   Again, I'm not going to tell you that the negative argument

09:53:41   9   always fails, and you may make it.  But you are much better off

09:53:45  10   using the time to instill in this court a strong belief as to

09:53:51  11   why you're correct as opposed to why your opponent is

09:53:55  12   incorrect, because many times what you get in that case is I

09:53:59  13   will come up with my own construction that was different from

09:54:02  14   both of you.  So it's always better, if you really believe that

09:54:06  15   you have the correct construction, to argue your position as

09:54:11  16   strongly as you can.

09:54:19  17         All right.  Do any of the defendants in the other

09:54:21  18   cases, the 526 through 529 cases, foresee the need for a large

09:54:30  19   amount of pre-Markman discovery.

09:54:34  20         MR. CHIBIB:  Your Honor, Mike Chibib.  We would only

09:54:37  21   envision possibly deposing inventors.  But, beyond that,

09:54:42  22   nothing else.

09:54:44  23         THE COURT:  All right.  Well, here is my concern.  I

09:54:55  24   am not comfortable with the idea of having a group of people

09:55:13  25   that I'm later going to hear an argument about their having to

09:55:17  1  accept Markman construction that I do in the first instance

09:55:22  2  when they didn't have an opportunity to be involved in it.  I

09:55:31  3  also do not want to have one Markman hearing and render a

09:55:41  4  Markman order and then get to hear why that was wrong in the

09:55:45  5  next Markman hearing.  In other words, part of this is giving

09:55:49  6  the plaintiff two bites at the apple at my claims construction,

09:55:53  7  which I really don't want to do.

09:55:54  8          So the bad news for Dynamic 3D, Halliburton, and

09:56:01  9  Schlumberger is I want to jointly schedule this and I want to

09:56:05 10  have one Markman hearing.  And I think that results in it being

09:56:09 11  pushed out a ways.  And what I have to say in that regard is,

09:56:20 12  Mr. Collins, you-all were the ones who waited four weeks to

09:56:23 13  file the other set of cases, or however it was, because that's

09:56:26 14  just the way it is.

09:56:27 15          Although I don't mind trying cases back to back and

09:56:31 16  spending a lot of time on the bench during trials, I don't find

09:56:35 17  it efficient for this court to chop up all of the proceedings

09:56:42 18  when it looks to me like there are going to be some similar

09:56:46 19  issues in the case.  So that means that I want to do a new

09:56:58 20  master scheduling order on these cases and proceed to Markman

09:57:10 21  forward later than currently scheduled.

09:57:13 22          So there was talk that was thrown around a little bit

09:57:16 23  ago that there had at least been some dates discussed.  How

09:57:19 24  detailed is that?  How close do you-all think you are on

09:57:25 25  determining a general set of dates for all six combined cases?

09:57:32   1              MR. CHIBIB:  I think, Your Honor, what was discussed

09:57:35   2    before was Paradigm had circulated among Defendants some

09:57:39   3    proposed dates that were four months pushed based on the filing

09:57:43   4    dates of the cases.  We do not have consensus here among

09:57:46   5    Defendants yet, obviously, and I haven't shared that with

09:57:50   6    Plaintiff's counsel yet.  We just spoke briefly on the phone

09:57:53   7    about it last evening.  So we can do that, of course.

09:57:57   8              THE COURT:  And I misspoke.  It wasn't four weeks.

09:57:59   9    It was four months.

09:58:00   10             MR. CHIBIB:  Yes, Your Honor.

09:58:01   11             THE COURT:  All right.  Well, let's talk about, while

09:58:03   12   you're here, what -- is there any problem with going ahead with

09:58:11   13   the tutorial on November the 12th?  I cannot imagine there

09:58:15   14   needs to be any discovery or anything with regard to the

09:58:20   15   tutorial.  And it matters not to me how early or how late that

09:58:24   16   it comes, and I don't see any reason why it can't remain on

09:58:29   17   November the 12th.

09:58:32   18             MR. COLLINS:  Plaintiff is agreeable.

09:58:36   19             THE COURT:  Can everybody be prepared for tutorial on

09:58:38   20   November the 12th?

09:58:42   21             MS. HANSEN:  Emerson Electric is agreeable.

09:58:45   22             THE COURT:  Well, if anybody disagrees?

09:58:50   23         (No response)

09:58:50   24             THE COURT:  All right.  We're going to keep the

09:58:52   25   tutorial on the 12th.  Now, let me say a little bit about that

09:58:55    1    if you haven't been in front of me before.  They're very

09:59:01    2    informal in my court.  We conduct them in the courtroom for the

09:59:06    3    obvious reason there are more people here than I can put in my

09:59:08    4    chambers.  Otherwise, they would be so informal that we would

09:59:11    5    have them in chambers, but we have more space here.

09:59:15    6            There will not be a reporter present for your

09:59:17    7    tutorial.  It is totally off the record.  Nothing that is said

09:59:21    8    in the tutorial by lawyers or witnesses or anybody else can be

09:59:25    9    used for cross-examine -- cross-examination purposes or

09:59:29   10    impeachment purposes of any other type of thing.  It is an

09:59:33   11    informal way for you to focus on the topics that I told you

09:59:39   12    about earlier.

09:59:42   13            The plaintiff leads off just, again, because that's

09:59:47   14    the default.  The defendants will get as much time as they want

09:59:54   15    equal to the plaintiff, although my experience has been, never

10:00:00   16    have the defendant or defendants taken as much time as the

10:00:03   17    plaintiff because, if you're playing by the rules, you're not

10:00:06   18    going to have disagreement with what the plaintiff says and I

10:00:10   19    don't have to hear it twice when you're telling me about how

10:00:13   20    what we're talking about works.  I would urge you to get

10:00:19   21    together and work out how you are going to proceed on this.

10:00:23   22            I do not want advocacy at the tutorial -- who wins

10:00:27   23    and who loses.  But I found that I am constantly having, in the

10:00:33   24    11 years I've been a judge on this bench, having to watch what

10:00:38   25    I say because lawyers glom onto every little word and construe

| | | |
|---|---|---|
| 10:00:42 | 1 | it differently from what I mean. |
| 10:00:48 | 2 | Lack of advocacy does not mean you can't have |
| 10:00:54 | 3 | disagreement.  Clearly the plaintiff thinks that these groups |
| 10:00:56 | 4 | of defendants have infringed on the patent.  Clearly the |
| 10:01:00 | 5 | defendants disagree with the plaintiff that there has been |
| 10:01:05 | 6 | infringement.  So it could happen that parts of your |
| 10:01:10 | 7 | disagreement could be how the product or the device or the |
| 10:01:15 | 8 | process works. |
| 10:01:18 | 9 | So disagreement is separate from advocacy.  It is not |
| 10:01:23 | 10 | a problem if Mr. Collins puts on testimony about the product or |
| 10:01:30 | 11 | puts on people who tell me how it works and draws a conclusion |
| 10:01:36 | 12 | from it for one or more of the defendants to say, Well, that's |
| 10:01:40 | 13 | not the way it works or that's not the way our products work. |
| 10:01:44 | 14 | I understand there is a disagreement here. |
| 10:01:46 | 15 | So when I say I don't want advocacy, I mean I don't |
| 10:01:50 | 16 | want one of you arguing on anything that you think will win or |
| 10:01:55 | 17 | lose the case other than showing me what's involved.  You will |
| 10:01:59 | 18 | have plenty of time to argue your conclusions later on as we go |
| 10:02:07 | 19 | through the case.  So that's going to be the ground rules on |
| 10:02:09 | 20 | the tutorial, and I will expect you-all to have conversations |
| 10:02:13 | 21 | or whatever you need to do before November the 12th to talk |
| 10:02:17 | 22 | about that and how you're going to proceed and how you want to |
| 10:02:21 | 23 | proceed on the tutorial. |
| 10:02:22 | 24 | Now, let me tell you the reason that I have a |
| 10:02:28 | 25 | tutorial in the courtroom and I want you here doing it.  Many |

10:02:33  1   judges who try patent cases have the luxury of having you-all

10:02:35  2   submit discs and they have, apparently, a lot of free time and

10:02:38  3   they sit in their chambers and watch the discs and learn all

10:02:42  4   about this.  I don't have that luxury with my docket.  If I

10:02:45  5   don't have you right here telling me about it, I can tell you

10:02:48  6   that if you sent me discs I would never look at them and we

10:02:52  7   wouldn't accomplish anything.  So that's why I do it this way.

10:02:55  8        Now, if you present slides at the tutorial -- I know

10:03:03  9   this ought to be axiomatic and everybody's going to laugh when

10:03:07 10   I say this, but it is really interesting to me how many times

10:03:10 11   it doesn't happen -- number your slides and have a booklet of

10:03:17 12   your slides for me because I want to take notes on them.  And

10:03:21 13   in my notes that I take, I may say "slide number 36 explains

10:03:27 14   this the best" for future reference.  If I don't have slide

10:03:31 15   numbers, I don't know how to do that.  So it just astounds me

10:03:37 16   sometimes and I think law firms forget to number their slides.

10:03:41 17   But it is of very little utility for me if you're going to have

10:03:46 18   slides if you don't number them and you don't have hard copies

10:03:50 19   of the slides for me.   So if you're going to do that, do that.

10:03:51 20        Also, if you're going to have some nature of

10:03:54 21   explanatory thing, have a copy for me.  Also have a copy of

10:04:00 22   anything you're going to present and, effectively, two copies

10:04:04 23   for the court so Ms. Carmona, who is my chambers attorney who

10:04:08 24   has overall supervision of your file, will also have a set

10:04:12 25   because she often marks on things differently than I mark on

| | | |
|---|---|---|
| 10:04:20 | 1 | things.  So that will help you get your point across because |
| 10:04:23 | 2 | we'll work together on this. |
| 10:04:24 | 3 | Right now I have the tutorial starting at 9 o'clock |
| 10:04:27 | 4 | on the 12th.  We will leave it that way.  I have not scheduled |
| 10:04:32 | 5 | anything behind you, but I would not expect this to take a day. |
| 10:04:37 | 6 | What I want you to do as you get closer in your planning |
| 10:04:42 | 7 | process on how you're going to present this, to get in touch |
| 10:04:44 | 8 | with Ms. Carmona after you-all, plaintiff and defendants, have |
| 10:04:48 | 9 | discussed jointly how long you think this will take and refine |
| 10:04:52 | 10 | the time as best you can. |
| 10:04:55 | 11 | Time is at a premium in the federal courts in Austin. |
| 10:04:59 | 12 | Some of you who are here a lot have heard this song a lot.  I |
| 10:05:06 | 13 | repeat it.  There's 677 active United States District Judges in |
| 10:05:11 | 14 | the country when all positions are filled.  Judge Sparks and I |
| 10:05:14 | 15 | have two of the top five weighted average dockets of the 677. |
| 10:05:23 | 16 | That means that we have a growing civil docket and a growing |
| 10:05:28 | 17 | criminal docket.  Part of the civil docket that is growing are |
| 10:05:33 | 18 | the number of patent cases that are filed in the Austin |
| 10:05:36 | 19 | Division of the Western District of Texas. |
| 10:05:39 | 20 | It is my desire to give you reasonable and adequate |
| 10:05:43 | 21 | time to get everything done, but I need your help on that |
| 10:05:47 | 22 | because any place I can buy out a couple of hours or buy back a |
| 10:05:52 | 23 | couple of extra hours of time, I've got a whole lot of lawyers |
| 10:05:57 | 24 | that want that time so I can do something else.  So don't get |
| 10:06:03 | 25 | me up until the Monday before the tutorial before you decide |

| | | |
|---|---|---|
| 10:06:09 | 1 | how long it's going to take. |
| 10:06:12 | 2 | Work on this.  Figure out what you agree on.  Figure |
| 10:06:16 | 3 | out how you can have combined things.  It is only a tutorial. |
| 10:06:20 | 4 | The case is not going to be won or lost at the tutorial.  And |
| 10:06:23 | 5 | as I've told you, nobody is going to get to use anything they |
| 10:06:27 | 6 | hear in the tutorial in any part of the case.  So I would |
| 10:06:32 | 7 | appreciate it if you would work with me on that. |
| 10:06:35 | 8 | Now, if we are looking at jumping roughly four months |
| 10:06:49 | 9 | out, that would effectively move the Markman hearing from late |
| 10:07:04 | 10 | November to late March or early April.  What is your general |
| 10:07:23 | 11 | preference?  I can tell you that I could work in time for a |
| 10:07:29 | 12 | Markman hearing in this case, the best week for me would be the |
| 10:07:32 | 13 | week of March the 23rd, depending on what your schedules are. |
| 10:07:37 | 14 | I'm not telling you you have to accept that.  I'm just telling |
| 10:07:41 | 15 | you what works for me, because I would like to set dates for |
| 10:07:46 | 16 | this and then we work back on everything. |
| 10:07:48 | 17 | Now, Mr. Collins, you rise. |
| 10:07:50 | 18 | MR. COLLINS:  Your Honor, the week of March 23rd |
| 10:07:52 | 19 | would be acceptable for Plaintiff. |
| 10:07:56 | 20 | THE COURT:  What's the defendants' reaction to that? |
| 10:08:04 | 21 | MS. WAHLS:  Your Honor, Anne Marie Wahls on behalf of |
| 10:08:07 | 22 | Schlumberger.  I think that week perhaps won't work for us |
| 10:08:10 | 23 | because of scheduling conflicts.  We could do either April or I |
| 10:08:14 | 24 | don't know if May would also be a possibility. |
| 10:08:17 | 25 | THE COURT:  Because of what? |

```
10:08:21   1              MS. WAHLS:  Scheduling issues in other cases --
10:08:24   2    trials and things in other cases.
10:08:26   3              THE COURT:  What does everyone else think?
10:08:32   4              MS. HANSEN:  Linda Hansen for Emerson.  We too would
10:08:35   5    prefer to move the Markman hearing into April or May.
10:08:38   6    Preferably May, actually.  We've got similar conflicts with
10:08:42   7    other matters that are pending.
10:08:44   8              THE COURT:  Well, let me tell you I'm trying to
10:08:47   9    accommodate you and I'm trying be fair here.  And Mr. Collins
10:08:53  10    has already had to swallow four months.  I really am not happy
10:08:59  11    about six months, particularly when this court's May calendar
10:09:05  12    is extremely full.  I can find some time the week of March the
10:09:13  13    30th.  I might be able to find some time later in April, but I
10:09:30  14    am -- I am really not inclined to go to May with the Markman
10:09:34  15    hearing in this case because I think you-all ought to be able
10:09:37  16    to work in a day for a Markman hearing.
10:09:46  17              MS. HANSEN:  Your Honor, I agree that one day isn't
10:09:48  18    the problem.  It's the preparation and getting things
10:09:51  19    organized.  There is a conflict.  We would prefer April, if
10:09:54  20    possible.  Thank you.
10:09:56  21              THE COURT:  Well, tell me about April.
10:10:00  22              MS. HANSEN:  We could work any time in April.
10:10:22  23              MR. COLLINS:  Your Honor, from the plaintiff's
10:10:24  24    perspective, March 30th would work well, too.  If the Court is
10:10:28  25    inclined to push it back into April, we could be available the
```

| | | |
|---|---|---|
| 10:10:33 | 1 | first week of April. Our preference would be to keep it at |
| 10:10:37 | 2 | March 23rd, that week. |
| 10:10:41 | 3 | THE COURT: Well, I have a pharmaceuticals case set |
| 10:10:49 | 4 | to go to trial in late April. Cases can always settle, but I |
| 10:10:56 | 5 | never rely on them settling. April the 3rd is Good Friday and |
| 10:11:07 | 6 | the beginning of Passover this year. I'm not going to set |
| 10:11:12 | 7 | anybody on that day. |
| 10:11:25 | 8 | All right. Here are your choices: Thursday, |
| 10:11:35 | 9 | April 2nd or Monday, April 6th. If we can get a consensus, we |
| 10:11:42 | 10 | will. Otherwise, I will just decide one. |
| 10:11:52 | 11 | MR. COLLINS: Your Honor, from the plaintiff's |
| 10:11:54 | 12 | perspective, we would prefer Thursday, April 2nd, as opposed to |
| 10:11:59 | 13 | having one early Monday morning. |
| 10:12:04 | 14 | MS. WAHLS: Your Honor, Ann Marie Wahls on behalf of |
| 10:12:07 | 15 | Schlumberger. We would agree on April 2nd. |
| 10:12:09 | 16 | THE COURT: Everybody else be available April 2nd? |
| 10:12:12 | 17 | MR. WHITTLESEY: April 2nd fine with IHS, Judge. |
| 10:12:15 | 18 | MR. CHIBIB: Okay. With Paradigm, Your Honor. |
| 10:12:17 | 19 | MR. HEJNY: Same for Halliburton and LMK, Your Honor. |
| 10:12:20 | 20 | THE COURT: All right. Then the Markman is going to |
| 10:12:22 | 21 | be April the 2nd, which is a Thursday, and we will start it at |
| 10:12:28 | 22 | 9 o'clock. |
| 10:12:30 | 23 | Now, it is -- know, as you talk about and work out |
| 10:12:36 | 24 | your disputed terms, that I intend for the Markman to be done |
| 10:12:47 | 25 | in a day. I think we can do it in a day. I do not want to -- |

| | | |
|---|---|---|
| 10:12:51 | 1 | when I see a case that has a whole lot of disputed terms in it, |
| 10:12:57 | 2 | I generally think that is a failure among the lawyers.  I |
| 10:13:01 | 3 | realize judges approach this a different way.  But what I want |
| 10:13:07 | 4 | you to do is concentrate on the terms that you think may be |
| 10:13:11 | 5 | outcome determinative of this case -- the important claims |
| 10:13:15 | 6 | construction terms. |
| 10:13:16 | 7 | Now, if you've been paying attention, you probably |
| 10:13:21 | 8 | know that, although it is risky to predict the Supreme Court of |
| 10:13:26 | 9 | the United States, I have a suspicion that by the time this |
| 10:13:32 | 10 | case gets to the Federal Circuit that I will have a whole lot |
| 10:13:36 | 11 | of discretion that I don't have now in claims construction. |
| 10:13:40 | 12 | You cannot read what the Supreme -- I believe, what the |
| 10:13:44 | 13 | Supreme Court did with regard to giving back to the trial |
| 10:13:48 | 14 | courts their discretion on what's an exceptional case and then |
| 10:13:56 | 15 | see the issue on which they accepted cert. in the *Teva Chem* |
| 10:14:00 | 16 | case and not believe that they're going to do something similar |
| 10:14:03 | 17 | which is going to restore a lot of -- well, of discretion to |
| 10:14:09 | 18 | the trial court in claims construction. |
| 10:14:13 | 19 | So I think the days of having a whole lot of disputed |
| 10:14:16 | 20 | terms so you can hide a "gotcha" in the record -- and I know |
| 10:14:19 | 21 | nobody in front of me ever did that.  It's the other patent |
| 10:14:21 | 22 | lawyers that have done that in order that you have some buried |
| 10:14:26 | 23 | little time bomb for the Federal Circuit.  I think -- or in |
| 10:14:29 | 24 | their waning hours.  I may be totally wrong on this.  But if I |
| 10:14:34 | 25 | were ever going to predict the Supreme Court, I think the |

| | | |
|---|---|---|
| 10:14:40 | 1 | Supreme Court is moving toward a lot more discretion with the |
| 10:14:43 | 2 | trial judges in patent case than we heretofore know.  So I'm |
| 10:14:48 | 3 | not trying to talk anybody out of asserting a claim as |
| 10:14:53 | 4 | disputed, but I urge you to sit down and talk about it and |
| 10:14:57 | 5 | assert only the important claims. |
| 10:15:00 | 6 | Now, I know some judges restrict you on the number of |
| 10:15:07 | 7 | claims.  I'm not going to do it going in.  I'm going to see |
| 10:15:11 | 8 | what you can work out on your own.  We may discuss it later. |
| 10:15:17 | 9 | You had something? |
| 10:15:17 | 10 | MR. HEJNY:  Yes, Your Honor.  I know you just said |
| 10:15:19 | 11 | you don't commonly restrict the number of claims.  I presume |
| 10:15:23 | 12 | you mean restrict the number of terms at the Markman hearing? |
| 10:15:26 | 13 | THE COURT:  That's what I meant.  That's what I |
| 10:15:28 | 14 | meant, the number of terms. |
| 10:15:30 | 15 | MR. HEJNY:  One thing that could possibly help |
| 10:15:32 | 16 | crystallize things for Markman, Your Honor, would be to adopt |
| 10:15:35 | 17 | an order similar to what the Federal Circuit has done in the |
| 10:15:39 | 18 | past limiting the number of asserted claims.  I don't know if |
| 10:15:43 | 19 | the Court has done that in the past or if that's something that |
| 10:15:45 | 20 | Your Honor would consider, but there are 93 claims in the |
| 10:15:49 | 21 | Dynamic 3D patents.  They've asserted 67 against Halliburton |
| 10:15:56 | 22 | and I think mid-70s against Schlumberger. |
| 10:16:01 | 23 | And I think if that pattern follows for the other |
| 10:16:04 | 24 | defendants, I think if we could come to some sort of agreement |
| 10:16:06 | 25 | or the Court would adopt some sort of limiting on the number of |

10:16:10  1   asserted claims prior to Markman, that could cut down on

10:16:14  2   Markman briefing and expedite the Markman proceeding.

10:16:17  3            THE COURT:  Well, it may.  But I would initially like

10:16:20  4   you-all to talk about it and try to be reasonable.  I expect

10:16:26  5   the lawyers that appear in front of me to demean themselves

10:16:30  6   like the professionals they are at all times.  I realize we

10:16:33  7   have at least one client representative in the room.  I don't

10:16:36  8   know if we have others.  But I urge all of you to tell your

10:16:41  9   clients that, from this court's point of view, it's the lawyers

10:16:45  10  that run the case, not the clients that run the case.

10:16:48  11           I do not like gamesmanship.  I do not like to see a

10:16:53  12  lot of claims asserted or terms in dispute that appear to me to

10:17:00  13  be clearly one party or another party wanting to go to scorched

10:17:06  14  earth on things.  And, believe me, that's easy to tell.  And so

10:17:11  15  what I want you-all to do is rationally sit down and discuss

10:17:15  16  this.

10:17:15  17           The fact of the matter is that everybody in this room

10:17:18  18  with a pulse knows that you're not going to try 60 or 70

10:17:24  19  disputed claims to a jury.  If you think you are, then you

10:17:27  20  haven't tried very many cases and you're not much of a trial

10:17:31  21  lawyer, because you're not going to hold the jury's attention

10:17:35  22  if you force them to wade through that much.  It's not going to

10:17:41  23  happen.

10:17:42  24           But at the early stages I prefer to see what you-all

10:17:45  25  can work out.  And then if we can't get a reasonable number

| | | |
|---|---|---|
| 10:17:49 | 1 | worked out, you-all can come back and we'll talk about that and |
| 10:17:54 | 2 | we'll talk about why you can't get it worked out to a |
| 10:17:58 | 3 | reasonable number of claims.  And that way I can make a |
| 10:18:01 | 4 | decision as who I think the troublemakers are in the case.  And |
| 10:18:05 | 5 | that's one of the roles you don't want to play.  But that's |
| 10:18:09 | 6 | what I do.  So I want to see if you-all can work this out |
| 10:18:17 | 7 | realistically and logistically at the beginning yourselves, |
| 10:18:21 | 8 | because I expect that's what the lawyers do. |
| 10:18:24 | 9 | As I've said a couple of times this morning, patent |
| 10:18:27 | 10 | cases are very expensive.  Lawyers get paid a lot of money on |
| 10:18:31 | 11 | patent cases.  It's not my job to tell you what to do so you |
| 10:18:37 | 12 | can collect that money.  It's your job to figure out how best |
| 10:18:40 | 13 | logistically to handle this case. |
| 10:18:42 | 14 | You only have one job, and that's to resolve the |
| 10:18:45 | 15 | case.  And you can resolve it by trial and, as I said earlier, |
| 10:18:49 | 16 | I'm not going to try to talk you out of your trial.  I don't |
| 10:18:53 | 17 | mind sitting up here and hearing a trial.  But what I do expect |
| 10:18:56 | 18 | you to do and where I will crack down on things is not to waste |
| 10:18:59 | 19 | my time and everybody else's time by throwing up a whole lot of |
| 10:19:07 | 20 | claim terms that need construing that aren't going to have |
| 10:19:10 | 21 | anything to do with the actual claims themselves that you |
| 10:19:12 | 22 | intend to try in the case. |
| 10:19:14 | 23 | So we're going to start with the idea of you trying |
| 10:19:16 | 24 | to sit down and work this out among yourselves.  And if you |
| 10:19:19 | 25 | can't do it, then I'll get involved and work it out for you. |

| | | |
|---|---|---|
| 10:19:23 | 1 | But one of the things that you are required to do in |
| 10:19:26 | 2 | my court now that you're all here is to treat this case |
| 10:19:29 | 3 | seriously and spend a lot of time on it trying to work out how |
| 10:19:33 | 4 | to get it in shape and get it stuffed around to where everybody |
| 10:19:38 | 5 | can get their arms around it and understand how it's going to |
| 10:19:42 | 6 | be tried.  I'm not going to do it for you.  Because at the end |
| 10:19:46 | 7 | of the day, when you can't agree, then what the taxpayers of |
| 10:19:49 | 8 | this country pay me to do is make decisions.  But we're going |
| 10:19:52 | 9 | to get it down to where we've got somebody saying X and |
| 10:19:56 | 10 | somebody saying Y, and then I can go one way or the other or I |
| 10:20:01 | 11 | can come up with my own.  But I want you to narrow it down to |
| 10:20:05 | 12 | where, if somebody is arguing one way and somebody is arguing |
| 10:20:08 | 13 | the other way, that you can present me with your best argument. |
| 10:20:11 | 14 | And at that point I'll make the decision as to what we're going |
| 10:20:14 | 15 | to hear and where we're going to go with it. |
| 10:20:18 | 16 | So I'm not going to do it right now.  I want you to |
| 10:20:20 | 17 | sit down and work on this.  I have yet to see a case or read |
| 10:20:27 | 18 | about a case -- I'm sure there's one out there -- where there |
| 10:20:31 | 19 | were 70 claims that were submitted to the jury.  If you think |
| 10:20:34 | 20 | the jury has enough time to read all of that, you're just |
| 10:20:40 | 21 | wrong.  So demean yourselves like the trial lawyers I believe |
| 10:20:44 | 22 | you are and work on this from the jury's perspective and work |
| 10:20:49 | 23 | this case down on, if you don't settle it, how you're going to |
| 10:20:53 | 24 | get it to trial. |
| 10:20:54 | 25 | And you'll be a lot happier about that because, if |

| 10:20:56 | 1 | you don't settle and you come back to me and we're having a |
| 10:21:00 | 2 | series of pretrial conferences on how we're going to get this |
| 10:21:03 | 3 | case worked down to trial, then I'll just start slashing it on |
| 10:21:10 | 4 | my own. |
| 10:21:11 | 5 | MR. HEJNY:  Thank you, Your Honor.  Halliburton will |
| 10:21:13 | 6 | work with the plaintiff, and we'll see if we can come to some |
| 10:21:14 | 7 | sort of agreement on trimming it down. |
| 10:21:16 | 8 | THE COURT:  Well, everybody work together on this you |
| 10:21:19 | 9 | know, maybe Mr. Collins will tell you in descending order how |
| 10:21:22 | 10 | many claims he's going to assert against each one of you, and |
| 10:21:25 | 11 | then you can pick out the small one and see if you can make a |
| 10:21:28 | 12 | deal on that or something of that nature. |
| 10:21:31 | 13 | All right.  Now, what I propose to do, Ms. Carmona |
| 10:21:37 | 14 | has circulated our usual chart for deadlines.  If you presume |
| 10:21:44 | 15 | at the bottom of that the tutorial is going to read |
| 10:21:47 | 16 | November 12, 2014 at 9 o'clock and the Markman hearing is going |
| 10:21:52 | 17 | to read April the 2nd, 2014 at 9 o'clock, do you-all think you |
| 10:21:56 | 18 | can agree on the other dates in there if I sent you away to |
| 10:22:02 | 19 | come back with an agreed scheduling order now that we know what |
| 10:22:05 | 20 | the back end of it is? |
| 10:22:07 | 21 | MR. COLLINS:  Your Honor, Plaintiffs certainly could. |
| 10:22:10 | 22 | MR. HEJNY:  Yes, Your Honor. |
| 10:22:11 | 23 | MR. CHIBIB:  Yes, Your Honor. |
| 10:22:12 | 24 | MS. WAHLS:  Yes, Your Honor. |
| 10:22:13 | 25 | MS. HANSEN:  Yes, Your Honor. |

```
10:22:14   1              THE COURT:  I think you can.  And bear in mind that a
10:22:17   2    week here or ten days here doesn't make a big amount of
10:22:20   3    difference in this case.  So be reasonable.
10:22:23   4              How long do you-all think you might need -- the
10:22:26   5    important dates to me are the courtroom times, the tutorial and
10:22:29   6    the Markman.  We have that.  And I realize you've got
10:22:32   7    conversations in there, and there are a bunch of you.  How long
10:22:37   8    do you think it would be before I might expect an agreed
10:22:40   9    amended scheduling order that applies to all cases.
10:22:48  10              MR. COLLINS:  Your Honor, from the plaintiff's
10:22:50  11    perspective, we could certainly take the first stab at throwing
10:22:54  12    out some dates that look very much like the sequence of dates
10:22:58  13    that we used in the previous scheduling order to get us to
10:23:02  14    April 2nd and maybe try to build in a little bit of float time
10:23:06  15    for the holidays when we don't have deadlines.  We can get
10:23:10  16    something in the next --
10:23:11  17              THE COURT:  It's a very un-federal judge like thing
10:23:13  18    to say, but I recognize the holidays.
10:23:16  19              MR. COLLINS:  And so do attorneys, even though
10:23:18  20    sometimes we like to deny it.
10:23:21  21              THE COURT:  Well, it depends on when your firm
10:23:24  22    figures up the formula for how much money you're going to get
10:23:27  23    paid for the next year whether you need to work over the
10:23:29  24    holidays or not.  I understand how that is.  If you need to
10:23:32  25    work over the holidays, work.  But I'm not going ask you to
```

| | |
|---|---|
| 10:23:37 | 1 work over the holidays for me. |
| 10:23:38 | 2       MR. COLLINS:  We could circulate some proposed dates |
| 10:23:42 | 3 leading up to the April 2nd Markman, you know, by, say, noon |
| 10:23:45 | 4 tomorrow to all the defendants and let them talk amongst |
| 10:23:51 | 5 themselves. |
| 10:23:51 | 6       THE COURT:  Well, go to the end.  How long do you |
| 10:23:53 | 7 think it will take you to get me an agreed order? |
| 10:23:55 | 8       MR. COLLINS:  Oh. |
| 10:23:56 | 9       MS. WAHLS:  Your Honor, I would think we'd be able to |
| 10:24:00 | 10 submit something probably by the end of the week.  Very early |
| 10:24:05 | 11 next at the latest. |
| 10:24:06 | 12       THE COURT:  Well, why don't I just give you a week |
| 10:24:07 | 13 and say I would like to have a scheduling order by August the |
| 10:24:11 | 14 19th.  Does that work? |
| 10:24:14 | 15       Now, let me tell you how I want you to do this.  If |
| 10:24:21 | 16 it's one thing that drives me nuts, I don't want to see one |
| 10:24:27 | 17 order that has six different styles on the same order.  Do it |
| 10:24:32 | 18 the way we've done it in the 111 and 112 cases, the Halliburton |
| 10:24:38 | 19 and Schlumberger case.  Do a separate order in each case.  The |
| 10:24:41 | 20 body of it will be the same, the dates will be the same. |
| 10:24:46 | 21 Because we're doing this just because on things that we can |
| 10:24:49 | 22 work in tandem on, I want to work in tandem on.  But it's -- it |
| 10:24:53 | 23 just makes more sense to not do some big fancy thing that the |
| 10:24:57 | 24 first three pages are nothing but caption.  So do it in each |
| 10:25:03 | 25 case.  And we'll have six different orders, but they will all |

| | | |
|---|---|---|
| 10:25:06 | 1 | look the same, the way we've done it with Halliburton and |
| 10:25:10 | 2 | Schlumberger. |
| 10:25:11 | 3 | Now, what I have got in front of me still is your |
| 10:25:26 | 4 | status report -- joint status report in the Schlumberger case |
| 10:25:31 | 5 | on removing counsel.  And I've read it carefully.  I know each |
| 10:25:46 | 6 | party's position.  I don't see how I can possibly make a |
| 10:25:53 | 7 | decision on it based on just representations.  I appreciate the |
| 10:25:57 | 8 | efforts that you-all have put into attempting to resolve this |
| 10:26:02 | 9 | and that you have been unable to do so, so far, as of |
| 10:26:06 | 10 | July 29th.  I've got one side saying that I want everybody |
| 10:26:13 | 11 | removed and the other side saying they don't even want a motion |
| 10:26:16 | 12 | filed in that regard. |
| 10:26:18 | 13 | So somebody want to address that with me. |
| 10:26:23 | 14 | MS. WAHLS:  Yes.  Your Honor, Schlumberger intends to |
| 10:26:24 | 15 | file a motion -- a disqualification motion by the end of this |
| 10:26:27 | 16 | week. |
| 10:26:30 | 17 | MR. COLLINS:  Your Honor, Plaintiff's position is |
| 10:26:31 | 18 | that there's a stay in place and the Court would need to lift |
| 10:26:35 | 19 | the stay in order for that to happen. |
| 10:26:37 | 20 | THE COURT:  That's not a hard thing for me to do, |
| 10:26:40 | 21 | because I do not know how I can possibly determine this without |
| 10:26:48 | 22 | getting a motion and a response and then seeing where we are. |
| 10:26:53 | 23 | So as of this moment, the stay is lifted to allow Schlumberger |
| 10:27:05 | 24 | to file whatever motion it deems appropriate to remove whomever |
| 10:27:12 | 25 | Schlumberger is going to try to remove. |

| | | |
|---|---|---|
| 10:27:18 | 1 | Now, with that statement having been made, let me ask |
| 10:27:34 | 2 | you, counsel, how long -- when do you think you can file that |
| 10:27:38 | 3 | motion? |
| 10:27:38 | 4 | MS. WAHLS:  Your Honor, I believe we will probably |
| 10:27:40 | 5 | file it by the end of this week. |
| 10:27:45 | 6 | THE COURT:  All right.  Well, I'm going to tell you |
| 10:27:48 | 7 | the stay is lifted for you to file a motion no later than |
| 10:27:52 | 8 | August the 19th.  I'll give you a week on that. |
| 10:27:57 | 9 | MS. WAHLS:  Thank you, Your Honor. |
| 10:27:58 | 10 | THE COURT:  Now, Mr. Collins, what that means is |
| 10:28:03 | 11 | you'll have under our local rules whatever the local rules |
| 10:28:06 | 12 | provide on a non-dispositive motion to respond to it. |
| 10:28:12 | 13 | Now, what's going to happen, I can just tell you, is |
| 10:28:19 | 14 | you-all are going to disagree then how we proceed after that. |
| 10:28:28 | 15 | I read your joint status report and I appreciate all the effort |
| 10:28:31 | 16 | that went into it, but I didn't see much in the way of |
| 10:28:33 | 17 | agreement in it.  So what I want you to do is, once the motion |
| 10:28:39 | 18 | and response is filed, to get on the phone with one another and |
| 10:28:45 | 19 | try to work out what you really think you're going to need in |
| 10:28:49 | 20 | the way of protective orders and reasonable discovery to get me |
| 10:28:55 | 21 | to that motion, because I want to deal with that motion |
| 10:29:01 | 22 | extremely quickly because everything kind of hinges off of |
| 10:29:07 | 23 | that. |
| 10:29:07 | 24 | So quickly after the response is filed, talk about it |
| 10:29:13 | 25 | because we're going to put it on a tickler and we're going to |

| | | |
|---|---|---|
| 10:29:15 | 1 | get back with you pretty quickly and set up a conference call. |
| 10:29:19 | 2 | I don't need to get you down here to talk about it.  If I need |
| 10:29:26 | 3 | somebody, Mr. McConnico is never very busy.  He can just run |
| 10:29:30 | 4 | over here. |
| 10:29:31 | 5 | MR. MCCONNICO:  I'm always ready to run, Your Honor. |
| 10:29:35 | 6 | But I was going to ask Your Honor, I've got another hearing at |
| 10:29:37 | 7 | 11:00.  Can I leave a little early?  It's in state court. |
| 10:29:41 | 8 | THE COURT:  You may.  I will not construe it as a |
| 10:29:43 | 9 | lack of interest.  And as long has Ms. Wahl thinks it's all |
| 10:29:47 | 10 | right, you can go. |
| 10:29:50 | 11 | MR. MCCONNICO:  I think she can handle this very, |
| 10:29:52 | 12 | very well. |
| 10:29:52 | 13 | THE COURT:  She's been doing okay so far. |
| 10:29:55 | 14 | So that's what I want to do.  So start working, |
| 10:29:57 | 15 | again, reasonably on what you think you're going to need to get |
| 10:30:00 | 16 | me to a point where I can make a decision on what we're going |
| 10:30:04 | 17 | to do about this because, you know, I'm going to allow some |
| 10:30:11 | 18 | discovery on it.  I want you to know that.  I know you've done |
| 10:30:16 | 19 | a lot of dealing with reading the report on eyes only and |
| 10:30:21 | 20 | attorneys' eyes only and things like that, so think about that. |
| 10:30:24 | 21 | You can have a separate confidentiality order that |
| 10:30:31 | 22 | just covers that motion.  It doesn't have to be drawn into |
| 10:30:33 | 23 | anything else.  We're going to proceed on what we're doing, but |
| 10:30:36 | 24 | then I'm looking at this over here on the side because it's |
| 10:30:42 | 25 | something that I want to get dealt with as quickly as possible. |

10:30:47  1          Now, what that does, based on the allegations that
10:30:53  2   have been in the joint status report, and the gravity of the
10:31:04  3   situation as you express it to me, is we're sitting here on
10:31:08  4   August the 12th and we have a motion to dismiss in the
10:31:12  5   Schlumberger case scheduled for September the 10th.  Now, if
10:31:20  6   there is a motion to disqualify filed on the 19th, that means I
10:31:26  7   will get a response sometime the latter part of August.  That
10:31:33  8   leaves us from precious little time before that motion is to be
10:31:38  9   argued.  And I can tell you that I probably and you probably,
10:31:44  10  with whatever discovery or what you want to present, are not
10:31:48  11  going to get it all to me by the 10th, and I'm probably not
10:31:52  12  going to have it ruled on by the 10th if you do.
10:31:55  13         So what are your thoughts on the hearing on the
10:31:58  14  motion to dismiss as it fits in the context with the motion to
10:32:03  15  disqualify?
10:32:04  16         MS. WAHLS:  Your Honor, I believe Schlumberger would
10:32:06  17  like to proceed with the motion to dismiss in parallel with the
10:32:10  18  motion to disqualify.  So keeping the September 10th hearing
10:32:16  19  date on the motion to dismiss.
10:32:18  20         THE COURT:  So I take that as a statement that, even
10:32:26  21  if Ms. Rutherford has all of this information, it is not
10:32:34  22  information that would affect the motion to dismiss; is that
10:32:38  23  right?
10:32:39  24         MS. WAHLS:  Well, the motion to dismiss is based on
10:32:41  25  Section 101 grounds, and so it's just, in our view, a different

| 10:32:45 | 1 | issue. |

10:32:45   1   issue.

10:32:45   2           THE COURT:  All right.  Mr. Collins, are you in

10:32:47   3   agreement that we proceed with the motions to dismiss on the

10:32:50   4   10th of September.

10:32:51   5           MR. COLLINS:  Plaintiff has no objection to that.

10:32:53   6           THE COURT:  All right.  Then we'll leave that set the

10:32:56   7   way it is.  I just didn't want us to get into this

10:33:00   8   disqualification thing and, again, it's in the context of time

10:33:04   9   is precious to me and I hear from you-all when it's too late

10:33:07   10   for me to set something else on the 10th that you don't think

10:33:10   11   it would be appropriate.

10:33:13   12           So the motions to dismiss in the Schlumberger and

10:33:16   13   Halliburton cases remain set for 2 o'clock on September 10th.

10:33:21   14   And we will proceed on these.

10:33:23   15           THE COURT:  Mr. Chibib?

10:33:24   16           MR. CHIBIB:  Your Honor, I'm sorry.  Some of the

10:33:27   17   other defendants have filed sort of "me too" motions on the

10:33:30   18   motion to dismiss.  I know Paradigm did yesterday.  Would we be

10:33:34   19   part of that hearing as well?  We're not going to need to

10:33:37   20   separately argue.  We just want to participate with the

10:33:39   21   hearing.

10:33:40   22           THE COURT:  Well, I don't know.  If you're not going

10:33:43   23   to separately argue, what does "participate in the hearing"

10:33:45   24   mean, because that's what I anticipate as argument?

10:33:50   25           MR. CHIBIB:  Yeah.  Okay.

| | | |
|---|---|---|
| 10:33:52 | 1 | THE COURT:  But go back and restate your question. |
| 10:33:54 | 2 | What are you saying you want to do on the 10th? |
| 10:33:57 | 3 | MR. CHIBIB:  I was simply commenting -- you had |
| 10:34:00 | 4 | remarked that for the *Halliburton* and *Schlumberger* cases, there |
| 10:34:04 | 5 | would be a hearing on the 10th.  I would just ask if that would |
| 10:34:07 | 6 | also be for the consolidated cases for those of us who also |
| 10:34:10 | 7 | filed a motion to dismiss on those same grounds? |
| 10:34:13 | 8 | THE COURT:  Well, I will look at that later, |
| 10:34:15 | 9 | depending upon what the responses are and what the filings are |
| 10:34:19 | 10 | and whether that's realistic and how close they are to being |
| 10:34:24 | 11 | the same.  I'm not going to put Mr. Collins in a situation |
| 10:34:29 | 12 | where he cannot adequately answer them.  So we'll just play |
| 10:34:33 | 13 | that by ear.  I'm not going to set any other motions to dismiss |
| 10:34:37 | 14 | at this point.  So if you filed something yesterday, what did |
| 10:34:41 | 15 | you think my earlier statement about not filing anything until |
| 10:34:45 | 16 | we had this hearing? |
| 10:34:47 | 17 | MR. CHIBIB:  We filed that in lieu of an answer, |
| 10:34:49 | 18 | Your Honor -- |
| 10:34:49 | 19 | THE COURT:  All right. |
| 10:34:50 | 20 | MR. CHIBIB:  -- under 12(b). |
| 10:34:51 | 21 | THE COURT:  Okay.  All right.  Well, we'll take a |
| 10:34:54 | 22 | look at that.  Right now only Schlumberger and Halliburton are |
| 10:34:59 | 23 | on the 10th.  Ms. Carmona, does that mean there's not a motion |
| 10:35:12 | 24 | in *Halliburton*? |
| 10:35:12 | 25 | MR. HEJNY:  Your Honor, it's just Schlumberger's |

| | | |
|---|---|---|
| 10:35:15 | 1 | motion to dismiss.  Halliburton did not file a motion. |
| 10:35:18 | 2 | THE COURT:  All right.  It's Emerson that filed the |
| 10:35:20 | 3 | other one.  All right.  Well, right now only Schlumberger is |
| 10:35:23 | 4 | set for 2 o'clock on the 10th, but I'm open about setting other |
| 10:35:28 | 5 | motions at that time.  But I'm going to wait until I see what |
| 10:35:31 | 6 | they are. |
| 10:35:32 | 7 | MR. COLLINS:  Your Honor, just one point of |
| 10:35:33 | 8 | clarification.  The court is not setting the hearing on the |
| 10:35:36 | 9 | motion to disqualify for September 10th, correct? |
| 10:35:40 | 10 | THE COURT:  No.  That's -- that's what I already |
| 10:35:42 | 11 | have.  I have not set anything on the motion to disqualify.  As |
| 10:35:45 | 12 | I said, what I want you-all to do, once I have the motion and |
| 10:35:49 | 13 | the response, is to talk about what you realistically need to |
| 10:35:54 | 14 | get that motion in shape for me to hear it so I'll have |
| 10:35:57 | 15 | everything in front of me. |
| 10:35:59 | 16 | MS. WAHLS:  Yes, Your Honor. |
| 10:36:00 | 17 | THE COURT:  Okay.  Anything else while I have you-all |
| 10:36:03 | 18 | here? |
| 10:36:06 | 19 | MR. HEJNY:  Your Honor, one more issue from |
| 10:36:11 | 20 | Halliburton.  I'm not sure if the court is aware, but |
| 10:36:14 | 21 | Halliburton on July 18th filed a petition nor inter partes |
| 10:36:19 | 22 | review with the patent office.  We will not know until late |
| 10:36:23 | 23 | January whether or not the patent office is going to institute |
| 10:36:25 | 24 | a review based on that petition.  At that time Halliburton |
| 10:36:28 | 25 | would anticipate potentially filing a brief motion to stay -- |

| | | |
|---|---|---|
| 10:36:32 | 1 | THE COURT:  A brief motion to stay? |
| 10:36:33 | 2 | MR. HEJNY:  Yes, Your Honor. |
| 10:36:35 | 3 | THE COURT:  How can a motion for stay be anything but |
| 10:36:38 | 4 | brief? |
| 10:36:39 | 5 | MR. HEJNY:  Would that be something the Court would |
| 10:36:41 | 6 | be willing to entertain? |
| 10:36:43 | 7 | THE COURT:  Well, anything you file I'm going to |
| 10:36:45 | 8 | entertain.  I will tell you it's going to be the rare day that |
| 10:36:48 | 9 | I'm going to stay anything while I wait on the patent office to |
| 10:36:51 | 10 | do something.  I'll just tell you that.  They take a long time |
| 10:36:59 | 11 | to do things.  I understand what they say.  I understand |
| 10:37:01 | 12 | sometimes there's an exception.  But it is not my intention to |
| 10:37:04 | 13 | hold this case up because of inter partes review. |
| 10:37:08 | 14 | At some point the congress is going to have to |
| 10:37:11 | 15 | determine whether they want to keep these parallel things going |
| 10:37:14 | 16 | on or not.  They have not shown any stomach toward doing that |
| 10:37:18 | 17 | yet.  I think most federal judges would welcome the congress to |
| 10:37:24 | 18 | say, When such a review is filed, the patent office |
| 10:37:28 | 19 | automatically has jurisdiction and we lose all jurisdiction in |
| 10:37:31 | 20 | the case.  Or if the lawsuit gets filed first, the federal |
| 10:37:34 | 21 | courts have jurisdiction and nothing's going to go back to the |
| 10:37:36 | 22 | patent office on it. |
| 10:37:38 | 23 | I think this is a really bad process we have, where |
| 10:37:41 | 24 | things can proceed on parallel tracks.  I think that is one of |
| 10:37:46 | 25 | the things that makes patent litigation so expensive, but I'm |

10:37:49  1  not listened to.  I can just tell you that I'm not going to

10:37:53  2  hold up things in my court while somebody goes back to the

10:37:56  3  patent office.  Unless you have a compelling reason -- if I see

10:38:00  4  a motion and there's a compelling reason, you know, I'm going

10:38:03  5  to look at it and I will at least pay attention to the motion.

10:38:07  6  But I wouldn't take it easy on anything else you're doing in

10:38:11  7  this case because you really think something is going to

10:38:14  8  happen.

10:38:15  9          I don't like to stay things -- and it's not just in

10:38:17 10  patent cases -- pending somebody else's action that I don't

10:38:21 11  have any control over.  The most you're likely to get -- and

10:38:31 12  none of it is going to occur for a while.  But if I had a

10:38:34 13  strong reason to believe that some ruling by the patent office

10:38:38 14  was imminent, I might give you a brief stay pending further

10:38:42 15  order of the court.  But I'm not ever going to give you a stay

10:38:46 16  that just says, pending a resolution by the patent office,

10:38:50 17  because that could take the rest of my active career.  And I've

10:38:53 18  seen it happen in some cases.

10:38:55 19          So file whatever you need to file to represent your

10:39:00 20  client, but don't have a whole lot of confidence that you're

10:39:03 21  going to get a stay while the patent office figures out what

10:39:06 22  they're going to do with it.

10:39:08 23          MR. HEJNY:  Yes, Your Honor.

10:39:09 24          THE COURT:  What else?

10:39:09 25      (No response)

10:39:10  1          THE COURT:  All right.  Well, I appreciate everybody

10:39:13  2  being here.  I look forward to working with you on this case,

10:39:20  3  and we'll just see how it goes.

10:39:25  4          But, remember, work together on things.  If you've

10:39:28  5  got a problem with one of your opponents, get on the phone and

10:39:31  6  work it out.  Do not try to work it out by E-mail.  That never

10:39:35  7  works.  The E-mails just escalate, and then somebody gets

10:39:39  8  really frustrated and files a motion for sanctions and prints

10:39:43  9  out all the E-mails and attaches them.

10:39:46  10          I don't want to read your E-mails.  I don't care what

10:39:49  11  you call one another.  I don't care how much you like one

10:39:52  12  another.  You're always better off if you work out your

10:39:54  13  problems, because what happens if you don't work them out, your

10:39:57  14  problem then becomes my problem and I might guess wrong as to

10:40:03  15  who I think the most inconsiderate attorney is or the attorney

10:40:09  16  that is causing most of the conflict.  It often is like the

10:40:12  17  football player who throws the second punch.  That's the one I

10:40:16  18  see.  So you have that risk.

10:40:18  19          The other risk you have if you don't work it out is

10:40:22  20  that I won't do what either one of you wants to do.  Don't

10:40:26  21  think if I have a dispute and one party says one thing and one

10:40:32  22  party says the other thing, that means I'm going to do one or

10:40:35  23  the other.  I'm going to work it out the way it best suits my

10:40:38  24  schedule and my docket, and it might not be to either one of

10:40:42  25  your satisfactions.

10:40:43  1        So bear in mind it's always better to work out your

10:40:45  2  problems in these cases.  Do it by phone.  The very best way is

10:40:51  3  to go to lunch, but I know a lot of you are in different

10:40:54  4  cities.  But if you can get together with one another, it's

10:40:57  5  always better than trying to do it by E-mail.  It just -- it's

10:41:03  6  too easy to hit "send" when you have a dispute.

10:41:06  7        You know, it's part of the problems we've got in the

10:41:09  8  computer world.  When I started practicing, we had people

10:41:12  9  called secretaries and they would come into your office and

10:41:15 10  you'd dictate a letter.  So my opponent would do something that

10:41:19 11  I'd really didn't like and I'd get the secretary in because I

10:41:21 12  was really mad and I'd dictate the letter and she'd type a

10:41:25 13  draft and bring it in and I'd be busy doing something else and

10:41:28 14  it would sit for a while.  And then when I read it, I'd cooled

10:41:31 15  down a little bit so I'd tone the letter down and make some

10:41:34 16  changes in it and send it back.  By the time I got the final

10:41:37 17  draft, I'd really cooled down a lot and most of the time it

10:41:40 18  didn't get sent.  But if it did, it wasn't nearly as

10:41:45 19  inflammatory as what I see in the E-mails.  So don't let your

10:41:47 20  first reaction be to send out an irate E-mail.

10:41:51 21        Secondly, pay attention to our local rule on

10:41:55 22  certificates of conference.  The local rules provide that on

10:41:59 23  every non-dispositive motion you will have a certificate of

10:42:03 24  conference.  Read what must be included in the certificate of

10:42:06 25  conference.  It is not an adequate certificate of conference

10:42:11  1  for me to see that I sent an E-mail to my opponent or even made

10:42:17  2  a phone call to my opponent at 10 o'clock this morning.  I

10:42:21  3  haven't heard back.  I want to get this filed, so I don't know

10:42:24  4  what their position is.  That is not sufficient.

10:42:27  5       Read the local rule on what must be in a certificate

10:42:31  6  of conference.  And it basically is:  You need to tell me in

10:42:35  7  the certificate of conference that you've discussed the motion

10:42:38  8  with your opponent and these are the reasons that the opponent

10:42:40  9  is opposed to it.

10:42:42  10       If you make several attempts to get ahold of your

10:42:45  11  opponent and you don't get anything back, then I will listen to

10:42:51  12  that in a certificate of conference.  But "several attempts"

10:42:54  13  means over a reasonable period of time.  So don't wait until

10:42:57  14  the last minute to start trying to find out.

10:43:01  15       You-all know what the issues in dispute are going to

10:43:04  16  be, and you can know before you even draft a motion what your

10:43:07  17  opponent's response is going to be if you'll just call them and

10:43:11  18  say, This is what we're going to do.  We think it's necessary.

10:43:14  19  What is your thoughts on it?  But comply with the local rule on

10:43:19  20  the certificates of conference.  Otherwise, I often just

10:43:24  21  dismiss motions that don't have adequate certificates of

10:43:28  22  conference on them and then you've got to start over.  So bear

10:43:31  23  that in mind.

10:43:31  24       I have an open chambers policy.  You may call

10:43:34  25  Ms. Carmona or any of my clerks if she's not here, and talk to

| | | |
|---|---|---|
| 10:43:39 | 1 | her about routine things –– what form do we like things |
| 10:43:43 | 2 | in? what are we likely to do in the way of scheduling?  Do not |
| 10:43:47 | 3 | talk to her about anything substantively.  Do not ex parte |
| 10:43:52 | 4 | her –– and you don't need my lecture on ex parte-ing.  You-all |
| 10:43:57 | 5 | know what it is. |
| 10:43:57 | 6 | If you need to have a conference call among all or a |
| 10:44:00 | 7 | portion of you, that's fine.  Call her and she'll get with my |
| 10:44:03 | 8 | schedule and set it up.  Again, I don't need to run everybody |
| 10:44:06 | 9 | in here every time we have something come up. |
| 10:44:08 | 10 | I know that –– that some of you have more than one |
| 10:44:14 | 11 | attorney involved in the case.  Generally if I'm going to |
| 10:44:18 | 12 | schedule a conference call, I'm going to schedule it when one |
| 10:44:22 | 13 | attorney for every party that needs to be on the call can be |
| 10:44:26 | 14 | present.  If you want to have others, that's fine.  But I'm not |
| 10:44:30 | 15 | going to put off a conference call until one party can have |
| 10:44:33 | 16 | three lawyers present or something like that.  I want one when |
| 10:44:36 | 17 | I set up the conference call if we need to do it, and we can do |
| 10:44:41 | 18 | a lot of things by conference call.  We've done it in other |
| 10:44:44 | 19 | cases, and we'll work on it that way. |
| 10:44:48 | 20 | If you ex parte Ms. Carmona or any of my clerks, you |
| 10:44:54 | 21 | can get on the "may not call chambers list."  And I've been |
| 10:44:57 | 22 | doing this a little over 11 years now, and nobody has ever |
| 10:45:01 | 23 | gotten on that list.  So if you've always wanted to be first on |
| 10:45:03 | 24 | anything, just overstay your welcome when you call my chambers, |
| 10:45:07 | 25 | and I can assure you you can rise to the head of the class and |

| | | |
|---|---|---|
| 10:45:10 | 1 | be the first person to ever get put on a "may not call chambers |
| 10:45:14 | 2 | list." |
| 10:45:14 | 3 | So end of the day, it is you-all work things out, |
| 10:45:18 | 4 | you-all work together.  Bring me the big issues that are |
| 10:45:23 | 5 | outcome determinative and I will rule with them, but don't |
| 10:45:26 | 6 | bring me the little ticky-tacky stuff. |
| 10:45:29 | 7 | If there's nothing else, thank you for being here |
| 10:45:30 | 8 | this morning.  Court's in recess. |
| 10:45:33 | 9 | (End of transcript) |

1  **UNITED STATES DISTRICT COURT      )**

2  **WESTERN DISTRICT OF TEXAS         )**

3      I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7      I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States.

10     WITNESS MY OFFICIAL HAND this the 14th day of August 2014.

11

12                          /S/ Arlinda Rodriguez
                            Arlinda Rodriguez, Texas CSR 7753
13                          Expiration Date:  12/31/2014
                            Official Court Reporter
14                          United States District Court
                            Austin Division
15                          501 West 5th Street, Suite 4152
                            Austin, Texas 78701
16                          (512) 391-8791

17

18

19

20

21

22

23

24

25